# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) v. ) ) ) JOSEPH HINNARD ) ) ) | Case No. 1:22-cr-97 Judge Atchley Magistrate Judge Lee |

## ORDER REGARDING REPORT AND RECOMMENDATION

On November 22, 2022, United States Magistrate Judge Susan K. Lee issued a Report and Recommendation ("R&R") [Doc. 31] recommending that Defendant Joseph Hinnard's Motion to Suppress [Doc. 15] be denied in part and granted in part. Defendant, through counsel, filed objections to the R&R on December 7, 2022. [Doc. 33].

For the reasons explained below, Defendant's objections to the R&R are **OVERRULED**. Further, the R&R [Doc. 31] is **APPROVED** and **ADOPTED** as the opinion of the Court.

### I.  STANDARD OF REVIEW

This Court is required to perform *de novo* review of any objections to an R&R. 28 U.S.C. § 636(b); *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) ("It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."). The Court can accept, modify, or reject the findings or recommendations – in whole or in part. *Logan v. City of Chattanooga, Tenn.*, 2019 WL 4888890, at *1 (E.D. Tenn. Oct. 3, 2019).

## II. DEFENDANT'S OBJECTIONS TO THE R&R

The Court identifies three distinct objections to the R&R in Defendant Joseph Hinnard's Objection to the Magistrate Judge's Report and Recommendation. [Doc. 32]. First, Defendant objects to the magistrate judge finding Officer Spain credible, contending his testimony did not support probable cause. [*Id*. at 2]. Second, Defendant objects to the legal conclusion that Officer Spain could ask the defendant to get out of the car based upon stop and frisk precedent. [*Id.* at 7]. Third, Defendant objects to the allowance of a "general probable cause" to support the officer's search, contending the magistrate judge should have required "particularized probable cause relative to the crime Officer Spain believed was on going." [*Id*. at 8]. Each of Defendant's objections are addressed individually below.

### A. First Objection: Officer Spain's Credibility

Defendant's first objection is to the finding that Officer Spain's testimony was credible. [Doc. 32 at 2]. Under *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986), parties have "the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." Here, Defendant specifically objects to the finding that Defendant exhibited signs of impairment based on Officer Spain's testimony. [Doc. 32 at 3-6].

Defendant claims that Officer Spain offered "standard boilerplate testimony…about impairment" that should not add to his credibility. [*Id.* at 3]. Defendant further points to Officer Spain's inability on cross examination to point out body cam footage supporting his testified real-time observations of signs of Defendant's impairment. [*Id*. at 3-4]. Additionally, Defendant asserts that Officer Spain's interaction with Sergeant Selman and the fact that Defendant was left standing unsupported in front of the police cruiser for 11 minutes and 37 seconds undermine Officer Spain's testified belief that Defendant was impaired. [*Id.* at 4-5]. The upshot of Defendant's objection is

his assertion that his own arrest for DUI "is a cover up for a bad search", believing that Officer Spain did not have probable cause to search Defendant's vehicle until after he had unwrapped the foil ball containing Xanax bars.

The ultimate issue underlying this objection is whether there was probable cause to search Defendant's vehicle, leading to the discovery of Xanax bars within a foil ball. In general, the Fourth Amendment does not require a warrant for an automobile search when police have probable cause to believe a vehicle contains contraband or evidence of criminal activity. *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998). Further, to support finding probable cause, "a pattern of suspicious behavior need only be recognizable by one 'versed in the field of law enforcement.'" *United States v. Knox*, 839 F.2d 285, 290 (6th Cir. 1988) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Accordingly, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Ellis*, 497 F.3d 606, 613 (6th Cir. 2007) (quotation marks and citation omitted). Further, probable cause does not require officers to rule out possible innocent explanation for suspicious facts. *See Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983) (holding "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.").

The following are the undisputed facts that the Court considers in determining the existence of probable cause. First, Officer Spain found the Defendant unresponsive at the steering wheel of a still-running, improperly parked vehicle at a Walmart while responding to a dispatch. Second, Officer Spain observed an unlit cigarette in the unresponsive Defendant's mouth along with a Nike bag and large pile of money in multiple denominations in his hands and lap. Third, Defendant was

unresponsive to knocks on the window of the vehicle. Fourth, upon opening the door of the vehicle[1] Officer Spain saw a large torch-style lighter in the center console and an aluminum foil wad in the driver's side door. Fifth, according to Officer Spain's training and experience, such a combination of money, bag, torch-style lighter, and foil frequently indicate illegal drug use.

Taken as a whole, the undisputed facts support finding that Officer Spain had probable cause to search the vehicle from the moment he opened the vehicle door, seeing the lighter and foil ball, regardless of whatever other conduct or behavior was observed after the Defendant stepped out of the vehicle. Officer Spain's observation of the Defendant in an unresponsive state behind the wheel of an improperly parked, still-running vehicle, surrounded by articles that, while not criminal in isolation, were known to Officer Spain to frequently accompany illegal drug use adequately supported Officer Spain's probable cause belief that contraband or evidence of a crime would be found within the vehicle. As Defendant's objections are all aimed at conduct occurring *after* the disputed search of the foil ball, they do not impact the existence of Officer Spain's probable cause based on observations occurring *before* the disputed search. Accordingly, Defendant's objection regarding Officer Spain's probable cause to search the Defendant's vehicle, and in particular his unwrapping of a foil ball revealing Xanax bars is **OVERRULED**.

### B. Second Objection: Stop and Frisk Vehicle Removal

Defendant's second objection is to the magistrate's legal conclusion that Officer Spain was permitted to order the Defendant out of his vehicle. The Court acknowledges that the Defendant also argues that a frisk occurring after the Defendant exited the vehicle was a violation of Defendant's rights. However, the frisk did not produce any evidence to be suppressed. It seems

---

[1] Officer Spain's ability to open the door is not in question and that action resides well within the community caretaking exception.

4

the Defendant is attempting to conflate the removal from the vehicle with an allegedly unlawful frisk[2]. Accordingly, the frisk claim does not need to be addressed.

Turning to the removal from the vehicle, Defendant acknowledges that Courts have long recognized that asking motorists to step out of their vehicles is at most a minor inconvenience and is permitted. *Michigan v. Long*, 463 U.S. 1032, 1047 (1983). [Doc. 33 at 7]. As noted in fn. 2, Defendant attempts to argue that his removal from the car was somehow part of a stop and frisk that violated his rights. The Court disagrees.

As admitted by Defendant himself, it is well established that officers may ask motorists to step out of their vehicles. *Michigan*. Additionally, the undisputed circumstances around the encounter, namely Officer Spain rushing with sirens on in response to a report of an unconscious person in a vehicle, the dispatch of an ambulance and firetruck to the scene, and the initial unresponsiveness of Defendant to Officer Spain's first knocks on the window, all lend significant credence to the notion that this removal from the vehicle took place under the community caretaking function of the police rather than as part of an investigation or attempt to acquire evidence of a crime. *See Cady v. Dombroswki*, 413 U.S. 433, 441 (1973) and *Taylor v. City of Saginaw*, 922 F.3d 328, 335 (6th Cir. 2019) (citing many prior examples where the community caretaking exception to Fourth Amendment warrant requirements are recognized in situations where officers are acting in furtherance of public safety).

---

[2] This part of Defendant's briefing [Doc. 33 at 7-8] is confusing. In the first paragraph "Defendant objects to the courts [sic] finding that the officer was permitted to order the defendant from the car." The second paragraph then admits that under *Michigan* it is long established that officers may ask motorists to step out of their vehicles. This admission is immediately followed by a new line of arguing that frisks require articulable reasonable suspicion that the occupants are armed and dangerous under a totality of the circumstances analysis. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) and *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Opening the third paragraph we find Defendant attempting to couch Officer Spain as removing Defendant from the car without any basis for claiming that Defendant was armed and dangerous, and the resulting frisk was a violation of Defendant's rights. Even if the frisk was unlawful, it did not produce any evidence, and thus there is no resulting evidence to suppress. Accordingly, there is no need for the Court to address the constitutionality of the frisk.

5

In sum, the Court finds it is clear that Officer Spain's purpose in opening Defendant's door and asking him to step out of the vehicle were efforts to protect the welfare of the vehicle's occupant – the Defendant. As such, Officer Spain's actions to remove Defendant from the vehicle he was found unresponsive in were totally permissible pursuant to Officer Spain acting in a community caretaking capacity. Defendant's objection to the magistrate's legal conclusion that Officer Spain was permitted to remove Defendant from the vehicle is **OVERRULED**.

### C. Third Objection: General Probable Cause vs. Particularized Probable Cause

Defendant's third and final objection is to the magistrate's allowance of what he characterizes as "general probable cause to support the officer's search" rather than requiring "particularized probable cause relative to the crime Officer Spain believed was on going". [Doc. 33 at 8]. In support of this position, Defendant offers the singular district court opinion from *United States v. Reagan*, 713 F. Supp 724 (E.D. Tenn. 2010). Defendant argues from *Reagan* that while DUI can be a crime where it is reasonable to expect to find evidence of the crime within the passenger compartment of the vehicle in some circumstances, such an expectation is not reasonable merely based upon a charge or the existence of evidence that the vehicle's driver is intoxicated. The rest of Defendant's argument can be summed up as a mere disagreement with the magistrate judge's finding that Officer Spain had probable cause to search Defendant's vehicle.

This Court has already found in its analysis of Defendant's First Objection that Officer Spain had probable cause to search the vehicle from the moment he opened Defendant's door and saw the lighter and foil ball without the need to further evaluate Defendant's state of intoxication or non-intoxication. While the Court has heard Defendant's argument from *Reagan*, well settled case law contradicts Defendant's position.³ Incorporating the Court's analysis from the First

---

³ *See United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (holding that under the automobile exception, law enforcement officers may search a vehicle without a warrant if they have probable cause to believe that the vehicle

Objection, Officer Spain had probable cause to search Defendant's vehicle and any containers therein upon seeing the foil ball and other items in the vehicle, notably before he opened the foil ball and found the Xanax bars. The law does not support requiring some ambiguously defined "particularized probable cause relative to the crime" – the automobile exception simply requires probable cause to believe that the vehicle contains contraband or other evidence of a crime. *Lumpkin*. Accordingly, Defendant's Third Objection arguing a special particularized probable cause was required to support Officer Spain's search under the automobile exception is **OVERRULED**.

### III. CONCLUSION

For all of the reasons expressed above, Defendant Hinnard's objections to the R&R are **OVERRULED**. The R&R is **APPROVED** and **ADOPTED** as the opinion of the Court, and Defendant's Motion to Suppress [Doc. 15] is **GRANTED** as to the suppression of the pre-Miranda statement conceded by the Government and as identified by footnote 4 of the R&R [Doc. 31 at 6] and **DENIED** in all other respects.

**SO ORDERED**.

/s/ *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**

---

contains contraband or other evidence of a crime.); *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) and *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) (both generally standing for the principle that the automobile exception requires nothing more than probable cause to believe the vehicle contains contraband or other evidence of a crime); *California v. Acevedo*, 500 U.S. 565, 579-80 (1991) (holding that container in an automobile may be searched pursuant to the automobile exception based only on probable cause to believe it contains contraband or evidence).